UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**Novus Franchising, Inc.,**

      **Plaintiff,**

v.

**Michael L. Dawson,**

      **Defendant.**

Civil No. 12-0529 (JRT/JJG)

REPORT AND RECOMMENDATION

JEANNE J. GRAHAM, United States Magistrate Judge

This matter is before the Court on Plaintiff Novus Franchising, Inc.'s Motion to Dismiss Defendant Michael L. Dawson's Counterclaims (ECF No. 45). The Honorable John R. Tunheim, United States District Judge, referred the motion to this Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) (ECF No. 59). For the reasons set forth below, the Court recommends that the motion be granted in part and denied in part.

## I. Procedural History

Plaintiff Novus Franchising, Inc. ("Novus") initiated this action against Defendant Michael L. Dawson ("Dawson") on February 29, 2012, bringing claims for breach of a franchise agreement and equipment lease, conversion, trademark infringement, violation of the Minnesota Deceptive Trade Practices Act, unjust enrichment, and unfair competition. Novus also demands an audit of Dawson's business books and records and payment of its attorneys' fees and costs.

Soon after filing the case, Novus moved for a preliminary injunction, which was granted in part by the Honorable John R. Tunheim, United States District Judge. (Order at 2, July 25, 2012, ECF No. 32.) Specifically, Judge Tunheim enjoined Dawson from using Novus's marks and products but refused to restrict Dawson from engaging in a competitive business. (*Id.* at 4.)

Novus filed an interlocutory appeal, and that controversy remains pending before the Eighth Circuit Court of Appeals. While an appeal conveys jurisdiction from a district court to the court of appeals "over those aspects of the case involved in the appeal," *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982), the merits of Dawson's counterclaims are not on appeal. Therefore, the Court has jurisdiction to entertain the motion to dismiss.

**II.      Facts Alleged in the Answer and Counterclaim**

When assessing a motion to dismiss counterclaims, the Court accepts as true the facts alleged in the Answer and Counterclaims and construes all reasonable inferences in the light most favorable to the defendant. *Fair Isaac Corp. v. Royal Caribbean Cruises, Ltd.*, Civ. No. 12-547 (SRN/AJB), 2013 WL 160121, at *5 (D. Minn. Jan. 15, 2013) (citing *Morton v. Becker*, 793 F.2d 185, 187 (8th Cir. 1986)). Accordingly, the following facts are derived from Dawson's Answer and Counterclaims (ECF No. 41).

Dawson first purchased an automotive glass repair franchise from Novus in 1990 with his father. (Countercl. ¶ 12.) Dawson later entered into an independent franchise agreement with Novus in 1998. (Answer ¶ 19.) Over the course of the parties' business dealings, Novus's Director of Franchise Development, Jim Olson, promised Dawson many times that he would have a right of first refusal for any new franchises opened in his territory. (Countercl. ¶¶ 9, 17.) Specifically, during negotiations of both the 1998 and 2008 franchise agreements, Olson promised Dawson that Novus would not sell another franchise in Dawson's territory without granting him a right of first refusal. (Countercl. ¶¶ 9, 17.) Dawson alleges that Olson made the promise for the purpose of inducing him to sign the agreements and that he signed the agreements in reliance on the promise. (Answer ¶ 36; Countercl. ¶ 18.) Dawson signed the 2008 agreement on June 25, 2008. (Countercl. ¶ 26.)

During the negotiation of the 2008 agreement, Olson concealed from Dawson the fact that Novus had already sold a franchise covering Dawson's entire territory to Barry Robinson. (*Id.* ¶¶ 4, 9, 22.) Olson told Dawson about Robinson's franchise "[w]ithin a few months" of the execution of the 2008 Franchise Agreement. (*Id.* ¶ 27.) Robinson opened a glass repair and replacement business three miles from Dawson's franchise at the end of 2008, and the resulting competition virtually destroyed Dawson's business. (*Id.* ¶ 29.) Dawson's monthly revenue decreased from $10,000 to $3,000 or $4,000 a month. (*Id.* ¶ 4.) Dawson stopped making royalty payments to Novus after October 2010, because he could not afford them. (*Id.* ¶ 31.)

Dawson alleges that Novus fraudulently induced him to sign the 2008 agreement by promising him a right of first refusal and by omitting the fact that it had already granted a new franchise in his territory. (*Id.* ¶¶ 6, 9.) Dawson further alleges that Novus's conduct also violated the Minnesota Franchise Act (MFA), Minn. Stat. § 80C.13. (*Id.* ¶¶ 34-37.)

### III. Legal Standards Applicable to the Motion to Dismiss Counterclaims

Novus moves to dismiss Dawson's counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Dismissal under Rule 12(b)(6) is proper when a party fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive dismissal, a pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Allegations that are "merely consistent with" liability are insufficient to create plausibility. *Id.* (quoting *Twombly*, 550 U.S. at 557). All facts alleged in the counterclaims must be construed in the light most favorable to Dawson. *See Kottschade v. City of Rochester*, 319 F.3d 1038, 1040 (8th Cir. 2003). Pleadings filed by pro se parties must be construed liberally, *see Estelle v. Gamble*, 429 U.S. 97, 106 (1976), but "still must allege

sufficient facts to support the claims advanced," *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004). Generally, a court may not consider matters outside the pleadings on a motion to dismiss, but the court may make exceptions to this rule for matters of public record, judicial orders, documents necessarily embraced by the pleadings, and exhibits attached to the pleadings. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

## IV. Discussion

### A. Statute of Limitations for the MFA Claim

Novus argues that Dawson's MFA claim is barred by the MFA's three-year statute of limitations. Under the MFA, "[n]o action may be commenced pursuant to this section more than three years after the cause of action accrues." Minn. Stat. § 80C.17, subd. 5. A cause of action for misrepresentation under the MFA accrues when the aggrieved party discovered, or should have discovered with reasonable diligence, the facts constituting the alleged fraud. *Moua v. Jani-King of Minn., Inc.*, 810 F. Supp. 2d 882, 903 (D. Minn. 2011); *Ellering v. Sellstate Realty Sys. Network, Inc.*, 801 F. Supp. 2d 834, 841 (D. Minn. 2011).

Dawson alleges in his Answer and Counterclaims that he learned Novus had broken its promise to grant him a right of first refusal and had sold another franchise in his territory to Robinson "within a few months" of executing the 2008 Franchise Agreement. Dawson alleges he signed the 2008 Franchise Agreement on June 25, 2008. Thus, Dawson knew the facts constituting the alleged fraud within a few months of June 25, 2008, meaning the statute of limitations expired within a few months of June 25, 2011. Dawson filed his counterclaim on September 21, 2012, more than a year later. For Dawson's counterclaim to be timely, the cause of action would have had to accrue after September 21, 2009, which was three years before the filing date of September 21, 2012. Even granting Dawson's pleading a liberal construction and

4

construing the facts in his favor, the only reasonable inference is that Dawson knew of the facts constituting the alleged fraud long before that date.

Indeed, Dawson does not deny he knew Novus had broken its promise to grant him a right of first refusal and had sold another franchise in his territory before September 21, 2009. He submits, however, that the statute of limitations did not accrue until October 2010, when he was driven out of business. The accrual date for an MFA claim is not triggered when the precise amount of damages is determinable, however, but when the aggrieved party discovers or should have discovered the facts constituting the alleged fraud. And, according to Dawson's allegations, he discovered the alleged fraud within a few months of June 25, 2008.

The Court concludes that Dawson's MFA claim is barred by the statute of limitations, and he has not argued or shown that the limitations period should be tolled. Accordingly, this claim should be dismissed.

### B. Reasonable Reliance

Novus next argues that Dawson cannot establish reasonable reliance for either his common law fraud claim or his MFA claim. The Court has already concluded that the MFA is barred by the statute of limitations and thus discusses only the common law fraud claim.

The elements of a common law fraud claim in Minnesota are: "(1) a false representation of a past or present material fact which was susceptible of knowledge, (2) the defendant knew the representation was false or made it without knowing whether it was true or false, (3) an intention to induce plaintiff to act in reliance on the misrepresentation, (4) the representation caused the plaintiff to act in reliance thereon, and (5) and the plaintiff suffered pecuniary damage as a result of the reliance." *Moua*, 810 F. Supp. 2d at 890 (citing *Hoyt Props., Inc. v. Prod. Res.*

*Group, L.L.C.*, 736 N.W.2d 313, 318 (Minn. 2007)). "Reliance in common law fraud cases must be reasonable." *Id.*

Novus argues that Dawson's reliance on Olson's alleged representations was unreasonable because the representations were inconsistent with provisions of the 2008 Franchise Agreement and the 2008 Franchise Disclosure Document (FDD). Novus relies on specific language in these two documents in arguing that Dawson's reliance was not reasonable. Before reaching the merits of the argument, the Court must decide whether to consider the extra-pleading documents. Novus attached the 2008 Franchise Agreement to its Complaint, and Dawson's Answer and Counterclaims incorporate many of its terms. The Court finds the 2008 Franchise Agreement embraced by the Answer and Counterclaims and will consider it in assessing Novus's motion. Furthermore, Dawson does not oppose the Court's consideration of the document.

The FDD is another matter. This document was neither attached to nor referred to in any pleading. Rather, Novus included the FDD as an exhibit to its motion to dismiss. (Beveridge Decl. Ex. 2, ECF No. 49.) Novus urges the Court to consider the FDD nonetheless and describes it as a public record available on the Minnesota Department of Commerce's website. But a search of the website identified by Novus, "https://www.cards.commerce.state.mn.us/CARDS/" (Novus Reply Mem. at 7; ECF No. 56), yields documents only for the years 2010-2012, not 2008. Finally, Dawson opposes the Court's consideration of the FDD. For these three reasons, the Court will not take the FDD into account in assessing Novus's motion to dismiss.

Perhaps realizing it had stretched the boundaries of the exception too far, Novus suggested at the motion hearing that the Court convert the motion to dismiss into a motion for summary judgment. The Court declines to do so. The timing of Novus's request does not permit

adequate notice to Dawson or an opportunity for him to present all relevant evidence. *See* Fed. R. Civ. P. 12(d). Accordingly, the Court will consider the 2008 Franchise Agreement, but not the FDD.

Novus relies on the following provisions of the 2008 Franchise Agreement. By its terms, the agreement granted Dawson a nonexclusive franchise: "We have the right to franchise, license, own, operate, and/or manage retail location or mobile Novus® businesses that are operated under the Marks . . . and/or under the Business System, both within and outside of the APR, even if these businesses compete for customers with the Business . . . ." (Compl. Ex. A [hereinafter 2008 Franchise Agreement] art. 2.5). In addition, the agreement contains language that it supersedes and terminates all other agreements, either oral or in writing. (*Id.* art. 25.12.) The agreement disclaims any warranty or guarantee of profits, sales, earnings, income, revenues, or success. (*Id.* art. 26.1.) The franchisee acknowledges that he or she received no representations regarding sales, revenues, income, profits, success, or other economic matters. (*Id.* art. 26.2.) The franchisee also acknowledges that other franchises will be granted "at different times, different locations, under different economics and in different situations." (*Id.* art. 26.3.)

The 2008 Franchise Agreement does not contain explicit language contradicting Novus's alleged promise that Dawson would have a right of first refusal for any new franchises in his territory. "The only situation in which the Minnesota courts have held that a contract provision negatives a claim of fraud is where the provision *explicitly* states a fact *completely antithetical* to the claimed misrepresentations." *Clements Auto Co. v. Serv. Bureau Corp.*, 444 F.2d 169, 179 (8th Cir. 1971) (emphases added) (*quoted in Comm'l Prop. Invest., Inc. v. Quality Inns Int'l, Inc.*, 938 F.2d 870, 875 (8th Cir. 1991)). In *Commercial Property Investments*, the court

considered various written disclaimers in a franchise agreement that did not squarely controvert prior oral representations. 938 F.2d at 875. The court rejected the application of a general disclaimer, an integration clause, and a disclaimer that did not "specifically contradict[]" the representations, in finding dismissal based on lack of reasonable reliance erroneous. *Id.* at 875-76; *see also Clements Auto Co.*, 444 F.2d at 178 (finding general disclaimers insufficient to negate reliance). When the terms of a contract do not plainly contradict an alleged misrepresentation, reliance is a question for the trier of fact. *Comm'l Prop. Invest.*, 938 F.2d at 876 (quoting *Johnson Bldg. Co. v. River Bluff Dev. Co.*, 374 N.W.2d 187, 194 (Minn. Ct. App. 1985)).

In the present case, there is no express contractual term in the 2008 Franchise Agreement contradicting Novus's alleged representation that Dawson would have a right of first refusal or alerting Dawson that another franchise had already been granted in his territory. Accordingly, Dawson's common law fraud claim should not be dismissed for lack of reasonable reliance at this stage of the case.

### C. The Mediation Provision

The 2008 Franchise Agreement requires Novus and Dawson to mediate all disputes involving the agreement, "[e]xcept where you or we believe it is necessary to seek equitable relief, and except when we seek to recover royalties or other amounts you owe us . . . ." (2008 Franchise Agreement art. 18.1.) Novus argues that this provision requires Dawson to mediate his counterclaims. Dawson responds that, having commenced this litigation, Novus waived its right to mediate his counterclaims.

By its terms, the mediation provision has two exceptions: (1) when either party seeks equitable relief or (2) when Novus seeks to recover royalties or other amounts owed. Both

exceptions apply here. As to the first exception, Novus is seeking equitable relief in the form of an injunction, specific performance, disgorgement of profits, and an audit of Dawson's books and records, in addition to monetary damages. Dawson is seeking equitable relief in the form of rescission of the 2008 Franchise Agreement, as well as monetary damages. With respect to the second exception, Novus is seeking to recover royalties and other amounts allegedly owed by Dawson. The carve-out provision does not forbid the parties from bringing related claims or counterclaims in the litigation.

Other language in the provision makes mediation mandatory "before either of us initiates any legal action against the other." (2008 Franchise Agreement art. 18.1.) It is notable that Dawson did not initiate this litigation; Novus did. Dawson's assertion of counterclaims in response to Novus's claims was not an initiation of a legal action.

Furthermore, by commencing this action, Novus has evidenced an intent to resolve all disputes with Dawson through litigation and waive its right to mediation. *See Erdman Co. v. Phoenix Land & Acquisition, LLC*, 650 F.3d 1115, 1116 (8th Cir. 2011). Courts weigh three factors in deciding whether a party has waived a contractual right to mediate: (1) whether the party seeking to enforce the provision knew of the right, (2) whether that party acted adversely to the right, and (3) whether that party prejudiced its opponent by its actions. *Id.* at 1117 (quotation omitted). First, Novus clearly knew of its right to mediate. Novus drafted the 2008 Franchise Agreement and is a sophisticated business entity. *See id.* at 1118. Second, Novus acted adversely to the right by joining claims potentially subject to mediation with other claims in this case and by failing to mention the mediation provision in its Rule 26(f) Report (ECF No. 44), which was filed after Dawson brought his counterclaims. *See id.* Third, Novus's claims and Dawson's counterclaims involve the same issues, and forcing Dawson to litigate those issues

simultaneously in two forums would be prejudicial. *See id.* at 1119. Dawson's counterclaims should not be dismissed for failure to mediate.

## V.     Recommendation

Therefore, **IT IS HEREBY RECOMMENDED** that Plaintiff Novus Franchising, Inc.'s Motion to Dismiss Defendant Michael L. Dawson's Counterclaims (ECF No. 45) be **GRANTED** as to the Minnesota Franchise Act claim and **DENIED** as to the common law fraud claim.


Dated: March 15, 2013

  s/ *Jeanne J. Graham*
JEANNE J. GRAHAM
United States Magistrate Judge


## NOTICE

Pursuant to District of Minnesota Local Rule 72.2(b), any party may object to this Report and Recommendation by filing and serving specific, written objections by **April 4, 2013**. A party may respond to the objections within fourteen days after service thereof. Any objections or responses shall not exceed 3,500 words. The District Judge will make a de novo determination of those portions of the Report and Recommendation to which objection is made. The party making the objections must timely order and file the transcript of the hearing unless the parties stipulate that the District Judge is not required to review a transcript or the District Judge directs otherwise.